# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BEST,<br><br>    Petitioner,<br><br>    v.<br><br>S. LAKE, Warden,<br><br>    Respondent. | Case No.: 1:19-cv-00026-DAD-JLT (HC)<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>[TWENTY-ONE DAY OBJECTION DEADLINE] |

Petitioner is a federal prisoner currently incarcerated at the United States Penitentiary at Atwater, California (USP Atwater). He filed the instant habeas action challenging two prison disciplinary proceedings. As discussed below, the Court will recommend that Respondent's motion to dismiss for lack of jurisdiction and failure to exhaust be **DENIED** and the petition be **DENIED** with prejudice on the merits.

## I.    PROCEDURAL HISTORY

On January 7, 2019, Petitioner filed a federal petition challenging two prison disciplinary proceedings conducted on August 3, 2016 and December 31, 2017. (Doc. 1 at 4, 6.) Because it appeared that the Court lacked jurisdiction and that Petitioner had failed to exhaust his administrative remedies, the Court ordered the petition be dismissed with leave to file a First Amended Petition. (Doc. 4.) On February 4, 2019, Petitioner filed a pleading he titled "First Amended Petition"; however, the pleading was not a complete petition. (Doc. 10.) The pleading was instead an attempt to amend the

1

original petition by addressing the deficiencies noted by the Court. The Court issued an order construing the filing as a motion to amend the petition and granted the motion. (Doc. 11.) In addition, in light of Petitioner's averments in that motion, the Court vacated the order dismissing the petition and directed Respondent to file a responsive pleading to the petition. (Id.) Respondent filed a response and motion to dismiss on June 12, 2019. (Doc. 16.)

## II. FACTUAL BACKGROUND

### A. Incident Report #2866057

On June 26, 2016, Petitioner received an incident report for violating Prohibited Act 208 for destroying or possession of any unauthorized locking device, and Prohibited Act 307 for refusing to obey an order of any staff member. (Doc. 16-1 at 74-75.) On August 3, 2016, Petitioner was found guilty of these acts in a prison disciplinary hearing. (Doc. 16-1 at 83-85.) Petitioner was sanctioned with loss of phone and commissary privileges for ninety days each and a monetary fine of $30.00. (Doc. 16-1 at 84.) Petitioner contends that his due process rights were violated when the hearing officer denied him the staff representative of his choosing, and when the officer refused to allow his staff representative the opportunity to review camera footage. (Doc. 1 at 3-4.) Petitioner challenged the outcome by appealing to the Western Regional Office. (Doc. 16-1 at 51.) The Western Regional Office in turn directed the hearing officer to reconsider the appeal and further stated that if Petitioner wished to further appeal the action, he would need to submit the appeal to the appropriate level. (Doc. 16-1 at 52.) The institution rejected Petitioner's administrative remedy request for the following reasons: 1) the filer submitted the request to the wrong level; and 2) the DHO matters are not handled at the local level. (Doc. 16-1 at 59.) Subsequently, the Western Regional Office rejected the appeal, reasoning that it concurred with the rationale of the regional office and/or institution for rejection. (Doc. 16-1 at 57.) The Central Office Level rejected Petitioner's appeal for the following reasons: 1) the filer did not submit a complete set (4 carbonized sheets) of the appeal; 2) the filer did not submit a proper number of continuation pages with the Central Office Level appeal; and 3) the DHO updated the hearing information for the incident 2866057 and noted that Petitioner should ask the unit team for a copy and then resubmit at the regional level. (Doc. 16-1 at 54.) Petitioner claimed his documents started getting erased and his case was being intentionally mishandled. (Doc. 1 at 4.)

B. <u>Incident Report #3054651</u>

In a separate incident, on November 9, 2017, during the noon meal Petitioner noticed a foreign substance inside his food which he described as "snot" or "spit." (Doc. 1 at 4, Doc. 16-1 at 98.) He contacted an officer to notify the unit lieutenant and report the incident. (Doc. 1 at 4.) While waiting for the officer's attention, Petitioner overheard other inmates also complaining about foreign materials in their meal trays. (<u>Id.</u>) Eventually the lieutenant made his rounds but he ignored the complaints. (Doc. 1 at 4-5.) Petitioner then allegedly began to fast to avoid contaminated food and to draw attention to the meal problems. (Doc. 1 at 5.)

On November 16, 2017, Petitioner received an incident report for violating Prohibited Act 212 for engaging in or encouraging a group demonstration. (Doc. 16-1 at 98-100.) On December 31, 2017, the hearing officer conducted a prison disciplinary hearing on the alleged violation and found Petitioner guilty. (Doc. 16-1 at 106-108.) He was sanctioned with loss of phone, commissary and visitation privileges for thirty days each and a monetary fine of $25.00. (Doc. 16-1 at 108.) Petitioner appealed and alleged that the DHO did not provide the requisite procedural and substantive due process to demonstrate Petitioner committed the prohibited act of engaging in a group demonstration. (Doc. 16-1 at 66.). On April 6, 2018, the Regional Office delivered a thorough response in which it concluded that Petitioner's allegations were investigated and deemed without merit. (Doc. 16-1 at 67-68.) On October 26, 2018, the Central Office investigated incident 3054651 and determined that the determination of the DHO was reasonable and supported by the evidence, that Petitioner's due process rights were upheld during the discipline process, and the sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy. (Doc. 16-1 at 62.)

Petitioner claims his due process rights were violated because there is nothing in the inmate handbook, rules or regulations stating that an inmate is prohibited from refusing to eat or accept a meal tray. (Doc. 1 at 6.) He claims that the regulation in question is unconstitutionally vague. (<u>Id.</u>) He also claims that he was denied a staff representative even though he requested one. (<u>Id.</u>)

**III. DISCUSSION**

A. <u>Motion to Dismiss</u>

On June 12, 2019, Respondent filed a response and motion to dismiss. (Doc. 16.) Respondent

contends that the petition should be dismissed for failure to exhaust as to incident report #2866057 and for lack of jurisdiction as to both incident reports. Petitioner further contends that the petition fails on the merits.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

Though the Court finds the petition is exhausted only in part, it agrees that the petition is meritless and will therefore recommend the petition be DENIED with prejudice.

### B.     Jurisdiction

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990); Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991). In this circuit, unlike § 2254 the habeas remedy of § 2241 is not restricted to claims involving only the fact or duration of confinement; rather, it is available for claims concerning the manner of execution of a sentence. See, e.g., Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008) (a statutory challenge to the BOP's failure to transfer an inmate to a residential reentry center was considered pursuant to § 2241 without a discussion of jurisdiction); United States v. Lemoine, 546 F.3d 1042 (9th Cir. 2008) (a challenge on constitutional and statutory grounds to the BOP's requirement that an inmate pay restitution at a higher rate than the sentencing court had ordered was considered pursuant to § 2241 without a discussion of jurisdiction); Montano–Figueroa v. Crabtree,

162 F.3d 548, 549–50 (9th Cir. 1998) (a challenge on constitutional and statutory grounds to the BOP's program for determining the amount and timing of payment by inmates of court-ordered fines was considered pursuant to § 2241 without a discussion of jurisdiction). Accordingly, § 2241 may be used to challenge the execution of a prisoner's sentence, even where the prisoner does not seek release or to shorten the duration of his confinement.

Petitioner states he has been found guilty in two disciplinary actions, and in both cases, he was fined. He states he was also sanctioned with loss of commissary and telephone privileges. Respondent argues that the petition should be dismissed because the Petitioner fails to challenge government action concerning duration of custody. (Doc. 16 at 6-9.) However, as stated in this Court's previous order, Petitioner is challenging the manner of the execution of his sentence, and it appears the Court has subject matter jurisdiction. (Doc. 11 at 3-4.)

C. Venue

A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677. Although these incidents occurred in Victorville, Petitioner is now in the custody of the Bureau of Prisons at USP Atwater, which is located within the jurisdiction of this Court. 28 U.S.C. §§ 2254(a); 2241(d). Therefore, venue is proper in this Court.

D. Exhaustion

A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies. Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir.1984). It is only after a petitioner has fully exhausted his administrative remedies that he becomes entitled to present his claims to the federal court. See United States v. Mathis, 689 F.2d 1364, 1365 (11th Cir.1982). However, the exhaustion requirement was judicially created; it is not a statutory requirement. Chua Han Mow, 730 F.2d at 1313; Montgomery v. Rumsfeld, 572 F.2d 250, 252 (9th Cir.1978). Because exhaustion is not required by statute, it is not jurisdictional. Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987); Montgomery, 572 F.2d at 252. "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the

faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown, 895 F.2d at 535.

With respect to incident report #2866057, Respondent contends that Petitioner has failed to exhaust his administrative remedies. After the Western Regional Office directed the hearing officer to reconsider, the Petitioner failed to submit his request at the correct level. The record indicates that Petitioner failed to exhaust his administrative remedies concerning this incident. Even still, the petition lacks merit and the Court recommend it be dismissed, as a result.

With respect to incident report #3054651, Petitioner states that he fully exhausted his administrative remedies before filing the instant petition. Respondent does not contend that Petitioner failed to exhaust, and the record indicates all requisite levels were exhausted. Accordingly, it appears Petitioner has exhausted his administrative remedies concerning this incident.

E.  Due Process Claims

1.  Legal Standard

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1984) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). Due process also requires that a disciplinary decision be supported by "some evidence." Id. at 455 (citing United States ex rel. Vajtauer v. Comm'r of Immigration, 273 U.S. 103, 106 (1927)).

The Supreme Court "has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence." Id. at 455 (internal citations omitted). The "some evidence" standard "is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" Id. (citing Vajtauer, 273 U.S. at 106). The Court does not need to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence to determine whether the standard is satisfied. Id.

"Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (internal citations omitted). Therefore, the Due Process Clause does not require the Court to "set aside decisions of prison administrators that have some basis in fact." Id. at 456.

2. Analysis

a. *Incident Report #2866057*

Petitioner contends that his due process rights were violated when the hearing officer denied him the staff representative of his choosing, and when the officer refused to allow his staff representative the opportunity to review camera footage. (Doc. 1 at 3-4.)

The record reflects that, in this case, the disciplinary hearing complied with the procedural due process requirements delineated by the United States Supreme Court. See Wolff, 418 U.S. at 563-72. Petitioner was given more than 24 hours' notice of the disciplinary charges, had an opportunity to call witnesses, and was given a written statement by the DHO of the evidence the DHO relied on and the reasons for the disciplinary action. (Doc. 16-1 at 74-85.)

Due process also requires that the DHO's decision be supported by "some evidence." Hill, 472 U.S. at 455. The standard for reviewing prison disciplinary findings as set forth in Hill, is "minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The Court will not re-weigh the evidence or make its own assessment as to the credibility of the witnesses. Hill, 472 U.S. at 455. If there is any reliable evidence in the record to support the disciplinary findings, the "some evidence" standard is satisfied, and the decision must be upheld. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Hill, 472 U.S. at 455-56.

The evidence presented at the disciplinary hearing and relied upon by the DHO included the officer's written report, other documentary evidence, supporting memos and the inmate's quarter assignment history. (Doc. 16-1 at 83-85.) One of the supporting memos was from Lieutenant T. Confer, regarding the review of the video surveillance pertaining to this incident report. (Doc. 16-1 at 81.) Review of the video showed that during the feeding process when the officer attempted to secure food into Petitioner's cell, the Lieutenant "clearly observed an arm come out of the slot, and noticed that the arm did not move." (Id.) Petitioner does not have a due process right to have his staff

representative review camera footage, moreover, the camera footage at issue was actually reviewed and presented evidence contrary to Petitioner's allegations. (See Doc. 16-1 at 81-85.) For all the reasons contained in the DHO's report, the Court finds that "some evidence" exists to support a finding that Petitioner committed the prohibited acts described in incident report 2866057.

The due process protections required by Wolff do not include representation by either an attorney or any other specific person during a prison disciplinary proceeding. See Wolff, 418 U.S. at 570 ("At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings."). See also Watters v. Ray, 175 F. App'x 212, 214 (10th Cir. 2006) (citing Baxter v. Palmigiano, 425 U.S. 308, 315, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)). While Wolff recognizes that, where an inmate is illiterate, he or she "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff," Wolff, 418 U.S. at 570, it does not follow that an inmate's due process rights are violated if that inmate is denied the assistance of a specific staff member of his or her choosing. Upon Petitioner's request for a staff representative, he was appointed CSW D. Blocher as his staff representative. (Doc. 16-1 at 83.) Petitioner's due process rights are not violated if he is denied the assistance of a specific staff member of his choosing.

      b.    *Incident Report #3054651*

Petitioner claims his due process rights were violated because there is nothing in the inmate handbook, rules or regulations stating that an inmate is prohibited from refusing to eat or accept a meal tray. (Doc. 1 at 6.) He claims that the regulation in question is unconstitutionally vague. (Id.) He also claims that he was denied a staff representative even though he requested one. (Id.)

The record reflects that the disciplinary hearing was conducted with the procedural due process requirements delineated by the United States Supreme Court. See Wolff, 418 U.S. at 563-72. Petitioner was given more than 24 hours' notice of the disciplinary charges, had an opportunity to call witnesses, and was given a written statement by the DHO of the evidence the DHO relied on and the reasons for the disciplinary action. (Doc. 16-1 at 98-108.)

As set out above, the due process protections required by Wolff do not include representation

by either an attorney or any other specific person during a prison disciplinary proceeding. See Wolff, 418 U.S. at 570. Upon Petitioner's request for a staff representative, he was appointed training instructor N. Vargas as his staff representative. (Doc. 16-1 at 106.) Petitioner's due process rights are not violated if he is denied the assistance of a specific staff member of his choosing.

Additionally, Petitioner was charged with violating Prohibited Act 212, which involves engaging in or encouraging a group demonstration; contrary to Petitioner's contentions, the prohibited act was not just refusing to eat or accept a meal tray. The evidence presented at the disciplinary hearing and relied upon by the DHO included the supporting memos, Lieutenant lot, entry to SIS and quarters assignment history. (Doc. 16-1 at 106-108.) The hearing officer specifically found that Petitioner "chose to participate in the unit group demonstration." (Doc. 16-1 at 107.) Additionally, as the Regional Office described, the evidence supports the fact that "[Petitioner], in concert with other inmates, raised a protest regarding feeding procedures at [their] housing unit and as a group decided not to partake of the lunch meal." (Doc. 16-1 at 67.) Petitioner also claims that the regulation in question, Prohibited Act 212, engaging in or encouraging a group demonstration, is unconstitutionally vague. However, his argument is misplaced as it appears he is challenging the action of refusing to eat or accept a meal tray as being unconstitutionally vague, not the actual regulation he violated, engaging in a group demonstration. Regardless, a regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement." United States v. Doremus, 888 F.2d 630, 634 (9th Cir.1989); see also Maynard v. Cartwright, 486 U.S. 356, 361 (1988). The regulation here is not void because it provides adequate notice to the inmates that engaging in a group demonstration is prohibited. Moreover, the evidence supports the finding that the Petitioner chose to participate in the group demonstration by refusing his meal.

Additionally, although Petitioner claims he was refusing his meal and participating in a fast, the record does not include any documentation to support this claim. (Doc. 1 at 5, Doc. 16-1 at 67.) The proper BOP procedures should be followed by an inmate for declaring the desire to participate in a fast. (Doc. 16-1 at 67.) Specifically, if an inmate wants to participate in a fast, it must be recognized by the BOP. (Id.) An inmate must notify religious services of their desire to fast, at which point

religious services coordinates with food service for the dissemination of meals. (Id.) However, the Petitioner failed to follow BOP procedures for declaring he wished to participate in a fast. (See id.)

Accordingly, the Court finds that "some evidence" exists to support a finding that Petitioner committed the prohibited act of engaging in or encouraging a group demonstration. Taken together, Petitioner has not shown a due process violation.

**IV.     RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that Respondent's motion to dismiss be **DENIED** and the petition for writ of habeas corpus be **DENIED WITH PREJUDICE**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **July 28, 2019**                        **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE